UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JAMES I. MITCHELL                                                      CASE NO. 08-10983

OPINION

On consideration before the court is an objection to the proof of claim of Panola County Solid Waste, an agency or department of Panola County, Mississippi, filed by the debtor, James I. Mitchell ("Mitchell"); a response to said objection having been filed by Panola County, Mississippi, on behalf of its agency which will be referred to in this Opinion as "Panola County Solid Waste;" and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core contested proceeding as defined in 28 U.S.C. §157(b)(2)(A), (B), and (O).

II.

Mitchell filed his voluntary petition pursuant to Chapter 13 of the United States Bankruptcy Code on March 11, 2008, and listed "Panola County Sanitation" on Schedule F as an unsecured creditor with a non-priority claim in the sum of $1,700.00. (As noted above, the correct name for this entity is Panola County Solid Waste.)

Panola County Solid Waste initially filed an unsecured proof of claim on July 22, 2008 in the amount of $821.92, which was listed as Claim No. 6 on the court's claims register. Subsequently, Panola County Solid Waste filed a second unsecured proof of claim on August 5, 2008, in the amount of $1,236.65, which was listed as Claim No. 7 on the court's claims register.

On September 16, 2008, Panola County Solid Waste amended proof of claim No. 7, asserting that it was a priority tax claim pursuant to §507(a)(8) of the Bankruptcy Code.

The debtor objected to the amended proof of claim stating that it is not a priority tax claim, but only un unsecured fee for the collection of garbage.

### III.

The initial issue for this court to determine is whether the claim of Panola County Solid Waste is a priority tax pursuant to §507(a)(8), or whether it is a fee which would be considered an unsecured non-priority claim.

The court reviewed the order of the Board of Supervisors of Panola County, entitled "In the Matter of Establishing Garbage and Rubbish Collection for Panola County, Mississippi," dated April 12, 1993. The pertinent language of the order is set forth as follows:

> THIS DAY there came on for consideration by the Board of Supervisors of Panola County, Mississippi, the matter of federal mandates concerning the collection and disposal of garbage and rubbish and the requirements of Title 19-5 and Title 17-7 of the Mississippi Code. [The language referring to Title 17-7 is incorrect; it should actually reference Title 17-17.]
> . . . .
>
> 7.     Effective May 1, 1993, occupants of each single family residence shall pay a monthly fee of $9.00 for the collection and disposal of garbage and for the disposal of household trash and rubbish. A 5% credit will be granted to those residents who pay annually in advance.
> . . . .
>
> 8.     Pursuant to §17-17-61 of the Mississippi Code, unpaid fees for garbage collection shall become an assessment upon the real and/or personal property and/or motor vehicle of the user of the services. Such fees shall become an assessment upon the real property where the garbage was collected regardless of whether the person who incurred the fees was the owner of the real property, a tenant or some other party. The procedure for collecting such fees shall be that as set forth in §17-17-61 of the Mississippi Code.

Miss. Code Ann. §19-5-21 provides the mechanism for counties to levy an ad valorem tax to defray the costs of establishing and operating rubbish and garbage disposal systems, as follows:

> (1)(a) Except as provided in paragraphs (b), (c), (d), and (g) of this subsection, the Board of Supervisors, to defray the cost of establishing and operating the system provided for in §19-5-17, may levy an ad valorem tax not to exceed four (4) mills on all taxable property within the area served by the county garbage or rubbish collection or disposal system.

Miss. Code Ann. §19-5-21(1)(a) (emphasis added).

In reviewing the board of supervisors' order, the court observes that the order makes no reference to the levy of an ad valorem tax as permitted by Miss. Code Ann. §19-5-21. Since the county speaks through the minutes and orders of its board, the court is compelled to conclude that Panola County has not effectively levied an ad valorem tax to defray the costs of the county rubbish and garbage disposal system. What the county has authorized is the collection of a monthly fee in the amount of $9.00 for these same purposes pursuant to Miss. Code §19-5-17, which provides as follows:

> [T]he Board of Supervisors of any county in the state shall provide for the collection and disposal of garbage and the disposal of rubbish, and for that purpose is required to establish, operate and maintain a garbage and/or rubbish disposal system or systems;... and, if it so desires, to establish, maintain and collect rates, fees and charges for collecting and disposing of such garbage and/or rubbish...

Miss. Code Ann. §19-5-17 (emphasis added).

Panola County Solid Waste has cited cases to the court that discuss guidelines for determining whether an obligation is a fee or a tax. There is no need to discuss these cases since the board of supervisors' order clearly establishes a $9.00 monthly fee as opposed to levying a tax. As such, in this case, the Panola County Solid Waste claim is simply one for garbage

3

collection fees, not a tax. "A claim held by a governmental entity for an obligation that constitutes collection of a fee rather than collection of a tax will not be entitled to priority." Collier on Bankruptcy 15th Ed. Rev. ¶507.10[6][a].

There is nothing to prevent the Panola County Board of Supervisors from enacting an appropriate order which levies an ad valorem tax not to exceed four mills to defray the cost of establishing and operating the garbage collection and disposal system. If this is done in keeping with state law, future claims filed on behalf of Panola County Solid Waste would be considered a tax pursuant to §507(a)(8) of the Bankruptcy Code.

IV.

In its order, the Panola County Board of Supervisors set forth a procedure for enforcing the collection of the garbage and rubbish collection fees pursuant to Miss. Code Ann. §17-17-61. This section formerly allowed the unpaid fees to become an assessment upon the real property, personal property, and motor vehicle of the user of the services. It allowed an assessment upon the real property where the garbage was collected regardless of whether the person who incurred the fees was the owner of the real property, a tenant, or some other party. Significantly, however, insofar as this proceeding is concerned, Miss. Code Ann. §17-17-61 was repealed on July 1, 1994.

Miss. Code Ann. §19-5-22 is now the operative Code section that imposes a lien upon the real property that receives garbage collection services when the fees are unpaid. To the court's understanding, the Panola County Board of Supervisors has not amended its April 12, 1993 order to substitute Miss. Code Ann. §19-5-22 for Miss. Code Ann. §17-17-61. In order to appropriately enforce the lien provision found in the currently effective section, the board of

supervisors must amend its order to make reference to the statutory change. Of course, this would not be necessary if the board elects to levy an ad valorem tax to defray the costs of these services pursuant to Miss. Code Ann. §19-5-21(1)(a).

V.

The next issue for the court to decide is whether Panola County may deny the renewal of a motor vehicle road and privilege license tag for the failure to pay garbage collection fees, specifically when these fees are dischargeable in bankruptcy as an unsecured non-priority claim. 11 U.S.C. §525(a) states the following:

> (a) Except as provided in the Perishable Agricultural Commodities Act, 1930, the Packers and Stockyards Act, 1921, and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943, a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act [former 11 USC §§1 et seq.], or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

In essence, §525(a) of the Bankruptcy Code prevents discrimination against a debtor when the debtor has not paid a "dischargeable" debt. Analogous to the factual scenario currently before this court are cases where governmental entities have refused to renew a drivers license or a parking permit because a debtor failed to pay fees that were dischargeable in bankruptcy. These decisions unequivocally hold that denying a drivers license or a parking permit under these circumstances is a violation of the anti-discrimination provision set out in §525(a). *See, Perez v.*

*Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *In re Thomas,* 2007 WL 1079980 (Bankr. N.D. Cal. 2007); *In re Games,* 213 B.R. 773 (Bankr. E.D. Wash. 1997); *In re Hinders,* 22 B.R. 810 (Bankr. S.D. Ohio 1982); and *In re Brown,* 244 B.R. 62 (Bankr. D. N.J. 2000). Following this line of authorities, the court is of the opinion that to deny Mitchell a motor vehicle license tag for his failure to pay the garbage collection fees would discriminate against him in violation of §525(a), since these fees are collectively an unsecured non-priority debt which is dischargeable in his bankruptcy case.

In support of the court's conclusion, the Attorney General of the State of Mississippi has opined that "[w]hile the tax collector may not take any action to collect outstanding garbage fees during the pendency of the bankruptcy, he also may not issue an automobile license plate to a person who is delinquent in payment. . . .thus, the debtor is not entitled to receive his or her car tag unless the fees are paid, <u>discharged</u>, or scheduled for payment in bankruptcy." (emphasis supplied) There is no reason to expect that the unpaid Panola County Solid Waste fees will not be discharged in Mitchell's bankruptcy case.

## VI.

## CONCLUSION

Based on the foregoing the court concludes that Panola County Solid Waste holds an unsecured non-priority claim against Mitchell for the unpaid garbage collection fees. This claim does not represent a priority tax debt as contemplated by §507(a)(8) of the Bankruptcy Code.

Because the Panola County Board of Supervisors has not amended its order of April 12, 1993, to correctly reference Miss. Code Ann. §19-5-22, as opposed to the repealed Miss. Code Ann. §17-17-61, the unpaid fees in this case are unsecured and cannot be collected by enforcing a

lien or liens on Mitchell's real and personal property.

Since the fees are dischargeable in Mitchell's bankruptcy case, the refusal to issue a motor vehicle license tag is prohibited under the anti-discrimination provision set forth in §525(a) of the Bankruptcy Code. Therefore, Panola County may not deny Mitchell the right to renew his motor vehicle license tag.

A separate order will be entered contemporaneously with this opinion.

This the 17th day of November, 2008.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE